UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

        Plaintiff,

                                      Hon. Judith E. Levy

v.

                                        Case No. 24-20141

ISAIAH OKOH,

        Defendant.

_____/

### Rule 11 Plea Agreement

The United States of America, by and through the United States Department of Justice, Criminal Division, Fraud Section (collectively, the "Office" or "government"); and the defendant, ISAIAH OKOH (the "defendant" or "OKOH"), have reached a plea agreement under Rule 11 of the Federal Rules of Criminal Procedure. The plea agreement's terms are:

**1.     Count of Conviction**

OKOH will plead guilty to Count 1 of the Superseding Indictment. ECF No. 56. Count 1 charges OKOH with Conspiracy to Commit Health Care Fraud in violation of 18 U.S.C. § 1349.

Page **1** of **22**

## 2.      Statutory Maximum Penalties

The defendant understands that his guilty plea carries the following maximum statutory penalties:

| Count 1 | Term of imprisonment: | Up to 10 years |
|---|---|---|
| | Fine: | Up to $250,000 or twice the gross pecuniary gain or the gross pecuniary loss |
| | Term of supervised release: | Up to 3 years |

## 3.      Agreement to Dismiss Remaining Charges

If the Court accepts this agreement and imposes a sentence consistent with its terms, the Office will move to dismiss all remaining charges against the defendant in the Superseding Indictment.

## 4.      Agreement Not to Bring Additional Charges

If the Court accepts this agreement and imposes a sentence consistent with its terms, the Office will not bring additional charges against the defendant for the conduct reflected in the factual basis of this Rule 11 Plea Agreement or the facts otherwise known to the Office at the time of entry into this Agreement.

## 5.      Elements of Counts of Conviction

The elements of Count 1 are:

First: That two or more persons conspired or agreed to commit the crime of health care fraud; and

Second:   The defendant, knowing the unlawful purpose of the plan, voluntarily joined in it.

The health care fraud statute, 18 U.S.C. § 1347, makes it a federal offense for anyone, in connection with the delivery of any health care benefits, items, or services, to knowingly and willfully execute, or attempt to execute, a scheme or artifice: (1) to defraud any health care benefit program; or (2) to obtain, by means of materially false or fraudulent pretenses, representations, or promises, any of the money or property owned by, or under the custody or control of, any health care benefit program.

## 6.    Factual Basis

The parties agree that the following facts are true; accurately describe the defendant's role in the offense; and provide a sufficient factual basis for the defendant's guilty plea:

From in or around 2019 through in or around 2022, OKOH voluntarily conspired with Co-Conspirator 1 and others to commit health care fraud, in violation of 18 U.S.C. § 1349. Medicare, Medicaid, and Blue Cross Blue Shield of Michigan ("BCBS") are "health care benefit programs" of the United States, as defined in 18 U.S.C. § 24. Furthermore, Medicare, Medicaid, and Blue Cross Blue Shield of Michigan are health care benefit programs affecting interstate commerce.

OKOH, a resident of Macomb County, Michigan, was a licensed pharmacist from at least 2019 through 2022. OKOH was the owner, resident agent, and pharmacist-in-charge at Gracee Pharmacy, PLLC, ("Gracee") located in Dearborn, Michigan. OKOH was the pharmacist-in-charge, and at times the resident agent and owner of Warren Family Pharmacy LLC, ("Warren Family"), located in Warren, Michigan. OKOH was the pharmacist-in-charge at Warren Pharmacy Rx LLC ("Warren Rx"), a pharmacy located in Dearborn Michigan and owned by Co-Conspirator 1, which was formed in or around 2021. Defendant, Co-Conspirator 1, and others, maintained national provider identifiers for Gracee, Warren Family, and Warren Rx in order to submit claims to Medicare, Medicare drug plan sponsors, Medicaid, Medicaid health plans, and BCBS.

During the specified time, Gracee, Warren Family, and Warren Pharmacy Rx were retail pharmacies which operated in the Eastern District of Michigan. Through these pharmacies, OKOH, Co-Conspirator 1, and others knowingly and willfully permitted the submission of, or caused the submission of, false or fraudulent claims to Medicare, Medicare drug plan sponsors, Medicaid, Medicaid health plans, and BCBS for prescription pharmaceutical drugs on behalf of Medicare and Medicaid beneficiaries, that were not purchased in sufficient quantities and/or not dispensed by Gracee, Warren Family, and Warren Pharmacy Rx. OKOH, Co-Conspirator 1, and others used forged prescriptions from medical providers to make it appear as

though the prescriptions were valid and medically necessary, when in fact the patient had never seen the doctor listed as prescribing the medication and the medication was not medically necessary. OKOH, Co-Conspirator 1, and others, further submitted and caused the submission of false and fraudulent claims to Medicare, Medicare drug plan sponsors, Medicaid, Medicaid health plans, and BCBS for prescriptions drugs that were not ordered by a physician.

During the course of the conspiracy charged in the Superseding Indictment, OKOH, Co-Conspirator 1, and others, acting through Gracee, Warren Family, and Warren Rx, submitted and caused the submission of false and fraudulent claims to the following health insurance programs in the specified amounts below that were purportedly medically necessary and dispensed, when, in fact, such drugs were not medically necessary, not actually dispensed, and/or not ordered by a physician:

| Health Insurance Program | Approximate Minimum Amount |
|---|---|
| Medicare and Medicare Drug Plan Sponsors | $2,510,394.89 |
| Medicaid and Medicaid Drug Plan Sponsors | $3,578,948.78 |
| Blue Cross Blue Shield of Michigan | $21,428.93 |

OKOH personally profited from his participation in the conspiracy by receiving fraud proceeds for the personal use and benefit of himself and others, directly or indirectly. OKOH further utilized multiple corporate entities that he owned and controlled to disguise the nature and source of his criminal proceeds, and

directed some of the criminal proceeds to corporate entities that Co-Conspirator 1 owned and controlled. On or about August 25, 2021, OKOH changed the registered agent for Warren Family from OKOH to Co-Conspirator 1, in part to conceal the true nature of the ownership and control over Warren Family.

Together with Co-Conspirator 1, OKOH jointly led the conspiracy, by organizing, leading, managing, and supervising others at Gracee, Warren Family, and Warren Rx in the commission of the criminal acts specified above.   The individuals included pharmacy technicians and patient recruiters.

The preceding statement is a summary, made for the purpose of providing the Court with a factual basis for the defendant's guilty plea to the charge against him. It does not include all the facts known to him concerning criminal activity which he and others engaged.  The defendant makes this statement knowingly and voluntarily and because he is in fact guilty of the crimes charged.

## 7.    Advice of Rights

The defendant has read the Superseding Indictment; has discussed the charges and any possible defenses with his attorney; and understands the crime for which he is charged.   The defendant understands that, by pleading guilty, he is waiving many important rights, including the following:

A.    The right to plead not guilty and to persist in that plea;

B.    The right to a speedy and public trial by jury;

C.      The right to the assistance of an attorney at every critical stage of the proceedings, including trial;

D.      The right to an appointed attorney, if the defendant cannot afford to retain one;

E.      The right to be presumed innocent and to require the government to prove the defendant guilty beyond a reasonable doubt at trial;

F.      The right to confront and cross-examine adverse witnesses at trial;

G.      The right to testify or not to testify at trial, whichever the defendant chooses;

H.      If the defendant chooses not to testify, the right to have the jury informed that it may not treat that choice as evidence of guilt;

I.      The right to present evidence or not to present evidence at trial, whichever the defendant chooses; and

J.      The right to compel the attendance of witnesses at trial.

**8.      Collateral Consequences of Conviction**

The defendant understands that his conviction here may carry additional consequences under federal or state law.  The defendant understands that, if he is not a United States citizen, his conviction here may require him to be removed from the United States; denied citizenship; and denied admission to the United States in the future.  The defendant further understands that the additional consequences of his

conviction here may include, but are not limited to, adverse effects on his immigration status; naturalized citizenship; right to vote; right to carry a firearm; right to serve on a jury; and ability to hold certain licenses or to be employed in certain fields. The defendant understands that no one, including his attorney or the Court, can predict to a certainty what the additional consequences of his conviction might be. The defendant, nevertheless, affirms that he chooses to plead guilty regardless of any immigration or other consequences from his conviction.

9.    **Defendant's Guideline Range**

A.    **Court's Determination**

The Court will determine the defendant's guideline range at sentencing.

B.    **Acceptance of Responsibility**

The government recommends under Federal Rule of Criminal Procedure 11(c)(1)(B) that the defendant receive a two-level reduction for acceptance of responsibility under USSG § 3E1.1(a). Further, if his offense level is 16 or greater and he is awarded the two-level reduction under USSG § 3E1.1(a), the government recommends that the defendant receive an additional one-level reduction for his acceptance of responsibility under USSG § 3E1.1(b). If, however, the government learns that the defendant has engaged in any conduct inconsistent with acceptance of responsibility—including, but not limited to, making any false statement to, or withholding information from, his probation officer; obstructing justice in any way;

denying his guilt on the offense to which he is pleading guilty; committing additional crimes after pleading guilty; or otherwise demonstrating a lack of acceptance of responsibility as defined in USSG § 3E1.1—the government will be released from its obligations under this paragraph and will be free to argue that the defendant not receive *any* reduction for acceptance of responsibility under USSG § 3E1.1.

### C.    Other Guideline Recommendations

The parties also recommend under the Federal Rules of Criminal Procedure 11(c)(1)(B) that the following guideline provisions apply to the defendant's guideline calculation on Count 1:

- USSG Section 2B1.1(a)(2): Base Offense Level of 6

- USSG Section 2B1.1(b)(1)(J): Loss Greater than $3.5 million (add 18 Levels)

- USSG Section 2B1.1(b)(7):  Health Care Fraud Offense with Loss Amount Greater Than $1,000,000 (add 2 levels)

- USSG Section 2B1.1(b)(10): Sophisticated Means (add 2 levels)

- USSG Section 3B1.2: Position of Trust (add 2 levels)

There is no agreement between the parties regarding the application of an aggravating role enhancement under USSG Section 3B1.1(c).  The government seeks application of a two-point enhancement under USSG Section 3B1.1(c); the defendant objects.

### D.     Factual Stipulations for Sentencing Purposes

The parties stipulate and agree that, for purposes of determining the applicable sentencing guidelines range, the loss amount attributable to the defendant's conduct is $6,110,772.60.

### E.     Parties' Obligations

Both the defendant and the government agree not to take any position or make any statement that is inconsistent with any of the guideline recommendations or factual stipulations in paragraphs 9.B, 9.C or 9.D.

### F.     Not a Basis to Withdraw

The defendant understands that he will have no right to withdraw from this agreement or withdraw his guilty plea if he disagrees, in any way, with the guideline range determined by the Court, even if that guideline range does not incorporate the parties' recommendations in paragraphs 9.B or 9.C.  Likewise, the government has no right to withdraw from this agreement if it disagrees with the guideline range determined by the Court.

## 10.     Imposition of Sentence

### A.     Court's Obligation

Defendant OKOH understands that in determining his sentence, the Court must calculate the applicable guideline range at sentencing and must consider that

range, any possible departures under the sentencing guidelines, and the sentencing factors listed in 18 U.S.C. § 3553(a).

### B.    Imprisonment

#### 1.    Recommendation

Under Federal Rule of Criminal Procedure 11(c)(1)(B), the government recommends that the defendant's sentence of imprisonment not exceed the defendant's guideline range as determined by the Court.

#### 2.    No Right to Withdraw

The government's recommendation in paragraph 10.B.1 is not binding on the Court.  The defendant understands that he will have no right to withdraw from this agreement or withdraw his guilty plea if the Court decides not to follow the government's recommendation.  Likewise, the government has no right to withdraw from this agreement if the Court decides not to follow the government's recommendation.  If, however, the Court rejects or purports to reject any other term or terms of this plea agreement, the government will be permitted to withdraw from the agreement.

### C.    Supervised Release

#### 1.    Recommendation

Under Federal Rule of Criminal Procedure 11(c)(1)(B), the parties recommend that the Court impose a three-year term of supervised release.

## 2.    No Right to Withdraw

The parties' recommendation is not binding on the Court.  Defendant OKOH understands that he will have no right to withdraw from this agreement or withdraw his guilty plea if the Court decides not to follow the parties' recommendation.  The defendant also understands that the government's recommendation concerning the length of the defendant's sentence of imprisonment, as described above in paragraph 10.B.1, will not apply to or limit any term of imprisonment that results from any later revocation of the defendant's supervised release.

### D.    Fines

There is no recommendation or agreement as to a fine.

### E.    Restitution

The Court must order restitution to every identifiable victim of the defendant's offense. The parties agree that restitution in this case shall total as follows: U.S. Department of Health and Human Services, $3,868,331.52; Blue Cross Blue Shield of Michigan, $21,428.93.   This restitution will be owed jointly and severally with Co-Conspirator 1. The restitution does not include amounts that may be owed to the State of Michigan pursuant to the partial judgment entered in *State of Michigan Department of Health and Human Services, Office of Inspector General v. Gracee Pharmacy PLLC and Isaiah Okoh*, No. 23-0029-CZ (Mich. 30th Cir. Court., March 11, 2024).

The defendant agrees that restitution is due and payable immediately after the judgment is entered and is subject to immediate enforcement, in full, by the United States. 18 U.S.C. §§ 3612(c) and 3613. If the Court imposes a schedule of payments, the defendant agrees that the schedule of payments is a schedule of the minimum payment due, and that the payment schedule does not prohibit or limit the methods by which the United States may immediately enforce the judgment in full.

The defendant agrees to make a full presentence disclosure of his financial status to the United States Attorney's Office by completing a Financial Disclosure Form and the accompanying releases for the purpose of determining his ability to pay restitution. The defendant agrees to complete and return the Financial Disclosure Form within three weeks of receiving it from government counsel. The defendant agrees to participate in a presentencing debtor's examination if requested to do so by government counsel.

### F.    Forfeiture

The defendant agrees, pursuant to Fed. R. Crim. P. 32.2 and 18 U.S.C. § 981(a)(1)(C) together with 28 U.S.C. § 2461, to forfeit any interest he may have in property constituting, or derived from, proceeds obtained, directly or indirectly, as the result of his violation of 18 U.S.C. § 1349, including but not limited to the following (collectively, Subject Property):

1) 2020 Land Rover Range Rover, Style: Station Wagon, Color: Black, VIN: SALGS5SE6LA406550 (23-FBI-002328)

2) Rolex Yacht-Master II Watch (23-FBI-003232)

3) Breitling Crosswind Watch (23-FBI-003892)

4) $29,589.00 U.S. Currency from a 2020 Land Rover Range Rover, VIN: SALGS5SE6LA406550, registered to Isaiah Okoh (23-FBI-002390)

5) $315,138.00 U.S. Currency from the residence at 174 Legacy Park Circle, Dearborn Heights, Michigan (23-FBI-002391)

6) $20,000.00 U.S. Currency from the residence at 5481 Maple Street, Dearborn, Michigan (23-FBI-002392)

7) Lending Club cashier's check number XX0166 in the amount of $427,136.19 made payable to the City of Dearborn and wired to the United States Marshals Service (23-FBI-002693)

8) Huntington Bank cashier's check number XXXXXX8541 in the amount of $355,170.53 made payable to the City of Dearborn and wired to the United States Marshals Service (23-FBI-002694)

9) The real property located at 42598 Park Cresent Drive, Sterling Heights, MI 48313, or cash in lieu of forfeiture for the above-described real property. The property is more fully described as the following real property situated in the City of Sterling Heights, County of Macomb, State of Michigan:

   UNIT 7, BUILDING 4, STRATFORD VILLAGE REGENTS, ACCORDING TO THE MASTER DEED RECORDED IN LIBER 9955, PAGE 791, AS AMENDED, AND DESIGNATED AS MACOMB COUNTY CONDOMINIUM SUBDIVISION PLAN NO. 690, TOGETHER WITH RIGHTS IN THE GENERAL COMMON ELEMENTS AND THE LIMITED COMMON ELEMENTS AS SHOWN ON THE MASTER DEED AND AS DESCRIBED IN ACT 59 OF THE PUBLIC ACTS OF 1978, AS AMENDED.

   More commonly known as: 42598 Park Cresent Dr.

   Tax ID Number: 10-12-203-007

TITLED TO: ZEEP INVESTMENTS, LLC; and

10) $50,400.36 in funds from Bank Account Number #XXXXXX4458 held in the name of Gracee Pharmacy, LLC at Grasshopper Bank, New York, NY (25-FBI-000261).

In addition, defendant agrees to the entry of a forfeiture money judgment against him in favor of the United States in the amount of $6,110,772.60, representing the total value of the property subject to forfeiture for defendant's violation of Count One of the Superseding Indictment, to the extent such value is not satisfied by the specific forfeitures set forth above.

Defendant agrees that the forfeiture money judgment may be satisfied, to whatever extent possible, from any property owned or under the control of defendant.   To satisfy the money judgment, defendant explicitly agrees to the forfeiture of any assets as he has now, or may later acquire, as substitute assets under 21 U.S.C. § 853(p)(2) and waives and relinquishes his rights to oppose the forfeiture of substitute assets under 21 U.S.C. § 853(p)(1) or otherwise.

The defendant agrees to the entry of one or more orders of forfeiture, including the entry of a Preliminary Order of Forfeiture, incorporating the forfeiture of the above referenced property following his guilty plea, upon application by the United States as mandated by Federal Rule of Criminal Procedure 32.2. The defendant

agrees that the forfeiture order will become final as to him at the time entered by the Court.

The defendant knowingly, voluntarily, and intelligently waives any challenge to the above-described forfeiture based upon the Excessive Fines Clause of the Eighth Amendment to the United States Constitution.

The defendant acknowledges that he understands that the forfeiture of assets is part of the sentence that may be imposed in this case and waives his right to challenge any failure by the court to advise him of his rights with respect to forfeiture, set forth in Federal Rule of Criminal Procedure 11(b)(1)(J).   The defendant also expressly waives his right to have a jury determine the forfeitability of his interest in the above identified property, as provided by Rule 32.2(b)(5).

The defendant further waives the requirements of Federal Rules of Criminal Procedure 32.2 and 43(a) regarding notice of the forfeiture in the charging instrument, pronouncement of the forfeiture at sentencing, and incorporation of the forfeiture in the judgment.

The defendant agrees to hold the United States and its agents and employees, as well as state and local law enforcement to include the Dearborn Police Department, harmless from any claims whatsoever in connection with the seizure and forfeiture of any property referenced above.

Upon entry by the Court of an Order of Restitution as part of the Judgment of Conviction in this criminal case and the forfeiture of any specific assets in this case becoming final, the United States Attorney's Office for the Eastern District of Michigan agrees to prepare a Request for Restoration of Forfeited Assets to Known Victim(s). The Request for Restoration will be submitted to the Department of Justice, Criminal Division, Money Laundering and Asset Recovery Section (MLARS) for determination. Defendant acknowledges that no representation has been made to him, however, as to the outcome of such a Request for Restoration, and understands that the MLARS may grant the Request for Restoration, may grant in-part the Request for Restoration, or may deny the Request for Restoration. Defendant expressly acknowledges that the Request for Restoration may be denied and that no representations have been made to him by or on behalf of the United States Attorney's Office or the Department of Justice as to the likelihood that such a Request will or would be granted.

### G.      Special Assessment

The defendant understands that he will be required to pay a special assessment of $100, due immediately upon sentencing.

11. **Exclusion from the Medicare Program and Other Federal Health Care Programs**

The defendant understands and acknowledges that as a result of this plea, the defendant will be excluded from Medicare, Medicaid, and all Federal health care programs. The defendant agrees to complete and execute all necessary documents provided by any department or agency of the federal government, including but not limited to the United States Department of Health and Human Services, to effectuate this exclusion within 60 days of receiving the documents. This exclusion will not affect the defendant's right to apply for and receive benefits as a beneficiary under any Federal health care program, including Medicare and Medicaid.

12. **Appeal Waiver**

The defendant waives any right he may have to appeal his conviction on any grounds.  If his sentence of imprisonment does not exceed the top of the guideline range determined by the Court, the defendant also waives any right he may have to appeal his sentence on any grounds.

13. **Collateral Review Waiver**

The defendant retains the right to raise claims alleging ineffective assistance of counsel and prosecutorial misconduct, as long as the defendant properly raises those claims by collateral review under 28 U.S.C. § 2255.  The defendant also retains the right to pursue any relief permitted under 18 U.S.C. § 3582(c), as long as the

defendant properly files a motion under that section.   The defendant, however, waives any other right he may have to challenge his conviction or sentence by collateral review, including, but not limited to, any right he may have to challenge his conviction or sentence on any grounds under 28 U.S.C. § 2255, 28 U.S.C. § 2241, or Federal Rule of Civil Procedure 59 or 60.

**14.    Consequences of Withdrawal of Guilty Plea or Vacation of Judgment**

If the defendant is allowed to withdraw his guilty plea, or if his conviction or sentence under this agreement is vacated, the government may reinstate any charges against the defendant that were dismissed as part of this agreement and may file additional charges against the defendant relating, directly or indirectly, to any of the conduct underlying his guilty plea or any relevant conduct.   If the government reinstates any charges or files any additional charges as permitted by this paragraph, the defendant waives his right to challenge those charges on the ground that they were not filed in a timely manner, including any claim that they were filed after the limitations period expired.

**15.    Use of Withdrawn Guilty Plea**

The defendant agrees that if he is permitted to withdraw his guilty plea for any reason, he waives all of his rights under Federal Rule of Evidence 410, and the government may use his guilty plea, any statement that he made at his guilty plea

hearing, and the factual basis set forth in this agreement, against him in any proceeding.

## 16.  Parties to Plea Agreement

This agreement does not bind any government agency except the Office, as defined herein.

## 17.  Scope of Plea Agreement

This plea agreement is the complete agreement between the parties and supersedes any other promises, representations, understandings, or agreements between the parties concerning the subject matter of this agreement that were made at any time before the guilty plea is entered in court.  Thus, no oral or written promises made by the government to the defendant, or to his attorney, at any time before the defendant pleads guilty are binding, except to the extent that they have been explicitly incorporated into this plea agreement.  If the parties have entered, or subsequently enter, into a written proffer or cooperation agreement, this plea agreement does not supersede or abrogate the terms of that agreement.  This plea agreement also does not prevent any civil or administrative action against the defendant, or any forfeiture claim against any property, by the United States or any other party.

18.     **Acceptance of Agreement by Defendant**

Unless this agreement has been fully signed by the defendant and received by the United States Attorney's Office before 5:00 PM on April 29, 2025, the government may withdraw from this agreement at any time before the defendant pleads guilty.

JULIE A. BECK
ACTING UNITED STATES
ATTORNEY

LORINDA LARYEA
Acting Chief
Criminal Division, Fraud Section
U.S. Department of Justice

DUSTIN M. DAVIS
Chief, Health Care Fraud Unit
Criminal Division, Fraud Section
U.S. Department of Justice

RYAN A. PARTICKA
Chief, White Collar Crime Unit
United States Attorney's Office
Eastern District of Michigan

s/ Jeffrey A. Crapko
JEFFREY A. CRAPKO
Trial Attorney
Criminal Division, Fraud Section
U.S. Department of Justice
211 W. Fort Street, Suite 2001
Detroit, MI 48226
Phone: (202) 445-9832
Email: Jeffrey.Crapko@usdoj.gov

By signing below, the defendant and his attorney agree that the defendant has read or been read this entire document, has discussed it with his attorney, and has had a full and complete opportunity to confer with his attorney.  The defendant further agrees that he understands this entire document, agrees to its terms, has had all his questions answered by his attorney, and is satisfied with his attorney's advice and representation.

David Burgess
Attorney for Defendant

Isaiah Okoh
Defendant

Dated: 4-24-25